N THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHELL CARTER, formerly known as MICHELL POWELL, | ) ) ) | CV. NO. 07-00140 DAE-LEK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| GEICO DIRECT, also known as GOVERNMENT EMPLOYEES INSURANCE COMPANY, and/or GEICO GENERAL INSURANCE COMPANY, and/or GEICO INDEMNITY COMPANY, and/or GEICO CASUALTY COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On October 15, 2007, the Court heard Defendants' Motion for

Summary Judgment. Kathy K. Higham, Esq., appeared at the hearing on behalf of

Defendants; James Ireijo, Esq., appeared at the hearing on behalf of Plaintiff.

After reviewing Defendants GEICO Direct, also known as Government Employees

Insurance Company, and/or GEICO General Insurance Company, and/or GEICO

Indemnity Company, and/or GEICO Casualty Company's (collectively, "GEICO"

or "Defendants") Motion for Summary Judgment and the supporting and opposing

memoranda, the Court GRANTS Defendants' Motion for Summary Judgment.

## BACKGROUND

On March 22, 2003, Jeffrey and Michell Powell (collectively, "the

Powells") made an Underinsured Motorist ("UIM") demand through counsel for

benefits from GEICO in the amount of $50,000.00 or for the full UIM coverage if

that amount was incorrect.[1]  The demand letter also "forewarned" GEICO that the

Powells contemplated surgical expenses and warned GEICO that a failure to make

payment in a timely manner would constitute bad faith and that GEICO would be

liable in full for its failure to pay.  Moreover, the Powells indicated that they would

seek arbitration should GEICO decide not to pay the full UIM policy.  On March

31, 2003, six business days later, GEICO responded to the letter, through Sylvia

Domingo, the Claims Examiner, providing that GEICO "neither accept[ed] nor

reject[ed] such demand as [it] had inadequate information."  The letter further

stated:

> Part of our obligation as an insurer is to fully investigate
> any claim presented.  Because your client is making a
> claim on their Underinsured Motorists Coverage, we are

---

[1]     Michell Powell is the only Plaintiff in the instant suit.  She now goes
by the name of Michell Carter.

2

> under an obligation <u>to request independent</u>
> <u>documentation which supports your client's claim</u>.
>
> In order to properly evaluate your client's claim, we are
> requesting <u>additional documentation</u>, not limited to the
> following:
>
> •  documentation from Ms. Powell's employer on the
>    reasons she lost her job and date of her
>    termination.  This documentation should also
>    include some information from her employer
>    indicating why Ms. Powell was not offered Cobra
>    or some other form of medical insurance once her
>    employment was terminated.
> •  documentation on the Powell's intent to purchase a
>    home.
> •  Dr. Ebesugawa's notation recommending surgery
>    and the type of surgery being performed.

(Emphasis added.)  Approximately two days later, GEICO sent a letter to the

Powells' counsel providing that "the UIM limit of the Powells' policy stands at

50/100 x 2 vehicles."  The Powells did not submit any supporting documentation

for their claims.

Despite the failure to submit any of the requested documentation, the

Powells, through counsel, made a demand for arbitration in a letter dated April 11,

2003, stating that GEICO's April 2, 2003 letter providing the Powells' policy limit

was "unresponsive."  In response, GEICO, through Ms. Domingo, sent a letter to

the Powells' counsel, clarifying that the purpose of GEICO's April 2, 2003 letter

was to notify the Powells that the UIM coverage on their policy was different than that suggested, per the Powells' request.  GEICO further noted, "[w]e previously responded to your demand letter on Mach 31, 2003 and subsequently discussed the information requested on the telephone.  We will be referring this file to [GEICO's] defense counsel due to your demand for arbitration."

GEICO's UIM Hawaii Family Automobile Insurance Policy ("UIM policy") provides, in pertinent part:

**ARBITRATION**

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:

(a) the extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* (i.e., issues of liability); or
(b) the amount of damages sustained by the *insured*

may be arbitrated. . . .

We will be obligated to pay no more than the applicable policy limits for this coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this coverage as defined in this policy.

Unless otherwise required by state law, the method, manner and format of any arbitration process will be subject to agreement by *you* and us. . . .

4

The Powells and GEICO agreed to a single arbitrator to resolve the dispute concerning the UIM claim and, on February 23, 2005, the arbitrator awarded $84,317.00 to the Powells.  After deducting the "collision loss deductible" and the sum of $20,000.00, which was the amount that the bodily injury insurer for the adverse driver paid, GEICO paid Plaintiff the sum of $54,317.00.  On March 15, 2005, Defendants, through counsel, sent a letter to Plaintiff's counsel, enclosing a Satisfaction of Arbitration Award document and a draft in the amount of $54,317.00.  In that letter, counsel noted, "[t]he draft is not to be negotiated until the Satisfaction of Arbitration Award has been executed by all parties and returned to us."  The Satisfaction of Arbitration Award was executed on March 18, 2005, which also was the date on which the draft was deposited.

Dissatisfied with the way in which GEICO handled Plaintiff's claims, on March 16, 2007, Plaintiff filed a Complaint against GEICO for tortious breach of contract and bad faith denial of insurance benefits or, in other words, breach of the implied covenant of good faith and fair dealing.  On August 27, 2007, Defendants filed the instant motion for summary judgment, which Plaintiff opposed on September 21, 2007.  On October 3, 2007, Defendants filed a reply.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

7

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Defendants argue that Plaintiff's claims are time-barred under Hawaii Revised Statutes ("Haw. Rev. Stat.") § 431:10C-315(a)'s two-year statute of limitations.  Moreover, Defendants assert that, as a matter of law, they did not breach any terms of the UIM policy or deny insurance benefits in bad faith.  That is so because, Defendants argue, the UIM policy provides for arbitration to resolve disputes over the extent to which Plaintiff was legally entitled to recover from GEICO and arbitration was the only reasonable option to resolve those disputes, given that Plaintiff did not submit any documentation to support her claims and she specifically made a demand for arbitration through counsel.  Plaintiff responds that the statute of limitations does not bar her claims, and she argues that "mere reliance" on the contractual arbitration provision does not absolve Defendants of all liability.

8

A.  <u>Statute of Limitations Had Not Run</u>

There is a dispute over the date on which the statute of limitations

began to run, with Defendants arguing that it began to run on March 15, 2005, the

date on which GEICO paid the UIM arbitration award, and Plaintiff arguing that it

began to run on March 18, 2005, the date on which Plaintiff's counsel received the

payment.  As Plaintiff filed her Complaint on March 16, 2007, if the statute of

limitations began to run on March 15, 2007, the date on which payment was

mailed, the Complaint may be untimely; on the other hand, if it began to run on

March 18, 2005, the date on which payment was received, the Complaint would be

timely.  Haw. Rev. Stat. § 431:10C-315(a) provides:

> No suit shall be brought on any contract providing motor
> vehicle insurance benefits or any contract providing
> optional additional coverage <u>more than the later of</u>:
>
> (1) Two years from the date of the motor vehicle accident
> upon which the claim is based;
> (2) <u>Two years after the last payment of motor vehicle
> insurance benefits</u>;
> (3) <u>Two years after the entry of a final order in
> arbitration</u>;
> (4) Two years after the entry of a final judgment in, or
> dismissal with prejudice of, a tort action arising out of a
> motor vehicle accident, where a cause of action for
> insurer bad faith arises out of the tort action; or
> (5) Two years after payment of liability coverage, for
> underinsured motorist claims.

(Emphasis added.)  Defendants enclosed a "Satisfaction of Arbitration Award" with the March 15, 2005 letter to Plaintiff's counsel and the draft of $54,317.00. Plaintiff's counsel received the mailing on March 18, 2005, depositing the draft into a bank account and signing the Satisfaction of Arbitration award that same day.

"Under the current state of Hawaii law, allegations of breach of the implied covenant of good faith and fair dealing may give rise to two distinct types of claims: (1) bad faith denial of benefits which sounds in tort; and (2) tortious breach of contract which sounds in contract but provides for compensatory tort damages."  Baird v. State Farm Mut. Auto. Ins. Co., 11 F. Supp. 2d 1204, 1207 (D. Haw. 1998), aff'd, 203 F.3d 830 (9th Cir. 1999).  In Baird, this Court calculated the statute of limitations for a claim of tortious breach of contract from the date that the final arbitration award was issued.  See id. at 1209.  This Court further calculated a claim of bad faith denial of insurance benefits from the date on which the insurer paid its last UIM benefit.  See id. at 1208-09.  Here, Plaintiff makes allegations similar to those in Baird, which the Court construes as a general claim of breach of the implied covenant of good faith and fair dealing.  That general allegation, in turn, gives rise to two specific claims: (1) tortious breach of contract and (2) bad faith denial of the insurance benefits.  Plaintiff's tortious

breach of contract claim is based on violations of terms of the UIM policy, which

violations are unclear.  The Court interprets Plaintiff's argument as a complaint

about Defendants' decision to invoke the arbitration provision to settle the claims

rather than to offer a settlement outright, resulting in "unreasonable delay or

unreasonable conduct of the Defendants," apparently in violation of terms of the

UIM policy.  (Complaint ¶¶ 23-24.)  Similarly, Plaintiff's claim of  bad faith denial

of insurance benefits is based on Defendants' refusal to make a "reasonable offer

of settlement to Plaintiff, . . . to engage in impediments designed to delay payment

[so] that Defendants could retain its money as long as possible, and avoid, if

possible, paying covered claims," including the failure to conduct an "independent

and fair investigation" to verify or to contradict Plaintiff's claims.  (Complaint

¶¶ 16-17.)

       As Plaintiff's tortious breach of contract claim arises from

Defendants' decision to arbitrate Plaintiff's claims, Defendants' allegedly tortious

actions in arbitrating Plaintiff's claims rather than settling the claims outright, thus

violating terms of the UIM policy, culminated in the final order in arbitration.

According to the Hawaii Revised Statutes and Baird, the statute of limitations,

therefore, may begin to run on the date on which the final arbitration award was

issued, that is, February 23, 2005.  See Haw. Rev. Stat. § 431:10C-315(a)(3)

11

(providing that the statute of limitations may begin to run two years after the entry of a final order in arbitration); <u>Baird</u>, 11 F. Supp. 2d at 1209 (noting the date on which the final arbitration award was issued, that is, April 24, 1994, as the date from which the statute of limitations for a claim of tortious breach of contract began to run).  Still, Haw. Rev. Stat. § 431:10C-315(a) provides that the statute of limitations begins to run on a contract "more than the later of" the provisions that follow, indicating that the provision that provides the most lenient time frame from which the statute of limitations should begin to run should apply.  As such, the Court finds that, in relation to the tortious breach of contract claim, it must apply the later of the applicable provisions under Haw. Rev. Stat. § 431:10C-315(a), which, here, would be the provision providing that a plaintiff may file suit within two years after the last payment of motor vehicle insurance benefits.  That is the same statute of limitations that applies to Plaintiff's claim of bad faith denial of insurance benefits, which similarly rests on Defendants' alleged delay in making payments caused by Defendants' decision to invoke arbitration.  Thus, the controlling date for the purpose of calculating the statute of limitations for both of Plaintiff's claims is two years after the last payment of motor vehicle insurance benefits.  <u>See</u> Haw. Rev. Stat. § 431:10C-315(a)(2).

The statute does not specify whether "payment" means the date on which payment is mailed or the date on which payment is received. As an affirmative defense, Defendants bear the burden of proving that the statute of limitations period has run. See Payan v. Aramark Management Services Ltd. Partnership, 495 F.3d 1119, 1122-23 (9th Cir. 2007). This Court and Hawaii state courts have discussed the statute of limitations under Haw. Rev. Stat. § 431:10C-315 in terms of "receipt" of payment, without conclusively determining whether the limitations period begins to run from the date of receipt or the date of mailing, as that was a non-issue. See, e.g., Silva v. Allstate Ins. Co., Cv. No. 06-00617, 2007 WL 1795561, at *3-4 (D. Haw. June 19, 2007) (tendering benefits on November 4, 2004, which also appears to have been the date that the benefits were received); Enoka v. AIG Hawaii Ins. Co., Inc., 128 P.3d 850, 857-59 (Haw. 2006) (determining that the statute of limitations did not bar the plaintiff's complaint because payment of benefits were made and received sometime in March 2000 and the complaint was filed on December 13, 2000); Higa v. Lino, 923 P.2d 952, 954-55 (Haw. Ct. App. 1996) (discussing receipt of benefits on December 10, 1987 without mentioning the date on which the benefits were tendered because that was a non-issue). In the employment context, the Ninth Circuit has calculated statutes of limitations from the date of receipt of letters and/or payment, with a rebuttable

13

presumption that receipt has occurred within three days of mailing in line with the

Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 6(e).  See, e.g., Payan, 495

F.3d at 1223; O'Donnell v. Vencor, Inc., 466 F.3d 1104, 1113 (9th Cir. 2006).

Here, although Plaintiff was aware that payment would be made in the

amount of $54,317.00 upon entry of the final arbitration award, she did not receive

and deposit that payment, thus satisfying the arbitration award, until March 18,

2005.  Receipt of the payment within three days of the date on which the payment

was mailed provides a reasonable time from which to calculate the statute of

limitations.[2]   That is so, in part, because the March 15, 2005 letter made clear that

the draft in the amount of $54,317.00 was not to be negotiated until execution of

the Satisfaction of Arbitration Award by all parties, which Plaintiff's counsel

executed on March 18, 2005, thus suggesting that "payment" did not occur until

the execution of the Satisfaction of Arbitration Award.  Moreover, applying the

latter date of "payment," that is, the date on which the draft was received rather

than tendered via mail, is consistent with the language of the statute, which

contemplates the running of the limitations period from "more than the later of" the

---

[2]      The Court need not at this time determine whether a three-day
rebuttable presumption exists for receipt of mailings, as in the employment
context, because receipt of payment occurred within three days of the date of
mailing.  It merely notes that an unreasonable delay in receipt of payment to
prolong the statute of limitations period likely would change the result here.

14

provisions, indicating an intent to apply the greater of the time periods provided.

See Haw. Rev. Stat. § 431:10C-315(a); see also State Farm Mut. Auto. Ins. Co. v.

Murata, 965 P.2d 1284, 1285 n.1, 1288 (Haw. 1998) (noting that the predecessor

statute provided that the latest of four alternative starting points for the running of

the two-year statute of limitations should apply).  Accordingly, based on Plaintiff's

receipt of the draft within a reasonable period of time (i.e., three days of payment),

the March 15, 2005 letter indicating that negotiation of the draft was not to occur

until execution and return of the Satisfaction of Arbitration, and the more lenient

statutory language providing that "more than the later of" the provisions should

apply, the Court concludes that March 18, 2005 was the date on which the

pertinent two-year statute of limitations began to run.  The Court, therefore, finds

that Plaintiff's claims were timely filed.

> B.  Plaintiff's Claims Fail as a Matter of Law

Although Plaintiff's claims survive the statute of limitations, they fail

as a matter of law.  First, Plaintiff's claim for tortious breach of contract arises out

of Defendants' decision to invoke the arbitration provision in the UIM policy.

That claim fails as a matter of law because invocation of the arbitration provision

in the UIM policy, at Plaintiff's behest and after not receiving the requested

documentation from Plaintiff, does not amount to a tortious breach of contract.

See Baird, 11 F. Supp. 2d at 1209 (finding, in a factually similar case, that the Court could not identify a breach of contract for which the defendant would be legally liable).

Second, Plaintiff's claim for bad faith denial of insurance benefits likewise arises out of Defendants' decision to seek arbitration rather than to make a "reasonable offer of settlement to Plaintiff," which Plaintiff claims was "designed to delay payment [so] that Defendants could retain its money as long as possible, and avoid, if possible, paying covered claims." Defendants respond that they had every right to seek arbitration because the value of Plaintiff's claim "was reasonably open to dispute" and a reasonable interpretation of the UIM policy permitted GEICO to rely on the arbitration provision to resolve any differences. The Court agrees with Defendants.

To start, the Court points out that, contrary to Plaintiff's argument, Defendants did not refuse to make a reasonable offer of settlement to Plaintiff. Plaintiff's counsel, in the demand letter, noted Plaintiff's expenses, forewarned GEICO of additional expenses that Plaintiff likely was to incur as a result of the accident, and prematurely accused GEICO of bad faith conduct should GEICO refuse to pay such expenses. Notwithstanding those demands, Plaintiff did not, at any time, submit documentation to support her claims. GEICO plainly stated in its

16

response to the demand letter that it neither accepted nor rejected the demand

because it had inadequate information to support it.  As such, Defendants

reasonably requested documentation in support, which Plaintiff never produced.

Plaintiff surely cannot be arguing that Defendants' failure to settle the

claims without conducting due diligence into the validity of the claims is

unreasonable, for a failure to investigate the claims thoroughly could lead to legal

liability for the tort of bad faith failure to investigate.  See Enoka, 128 P.3d at 863-

64; Best Place v. Penn Am. Ins. Co., 920 P.2d 334, 341 (Haw. 1996) (recognizing

a bad faith cause of action against insurers, in part, to compel insurers to perform

their obligations in good faith); Pachuta v. Unumprovident Corp., 242 F. Supp. 2d

752, 762 (D. Haw. 2002) (observing "that the Hawaii Supreme Court evidently

adopted th[e] [bad faith] cause of action to heighten the duty of an insurer to

investigate claims more thoroughly").  In fact, Plaintiff appears to allege bad faith

in "fail[ing] to conduct any independent or fair investigation or evaluation of the

details of Plaintiff's claim," which the record simply does not support.  Again,

Defendants attempted to investigate Plaintiff's claims fairly and thoroughly

through their request for documentation, but Plaintiff's failure to provide

documentation and, instead, to demand arbitration hampered that investigation.

Far from demonstrating a desire to delay payment, Defendants' response to

17

Plaintiff's demand suggested a willingness to work with the Powells, following an investigation into their claims, before making a decision.  Plaintiff has provided no rule, and the Court has not found one, that would suggest that Defendants must (or even may) make settlement offers for insurance claims without first investigating the claims.  Legally, the contrary is true.  In short, Plaintiff's argument that Defendants acted in bad faith because "there was absolutely no offer of money or attempt to negotiate a settlement in the underlying UIM case" is unfounded.

Next, because Defendants did not receive documentation, they decided to proceed with arbitration at Plaintiff's request and in accordance with terms of the UIM policy.  Generally, insurers may limit their liability through an insurance policy so long as the limitations are not in violation of statutes or public policy.  See Enoka, 128 P.3d at 860 (quoting Dairy Rd. Partners v. Island Ins. Co., 992 P.2d 93, 106 (Haw. 2000)).  When construing terms of the insurance policy, courts must look to the "plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended," while construing the terms in the context of the policy as a whole.  Id.  Plaintiff does not assert that the arbitration provision in the UIM policy violated a statute or public policy; in fact, Plaintiff, through counsel, made a specific demand for arbitration. Now, Plaintiff claims that such arbitration constituted a delay tactic to stall

18

payment of their benefits "only after her case proceeded to binding Arbitration and 'legally' forced Defendants to pay up" in an attempt to "hardline" her claims. (Complaint ¶¶ 15-16.)

To be clear, Defendants only had a duty to pay after fully investigating Plaintiff's claims and determining what payment, if any, was owed. The claims proceeded to arbitration only after Plaintiff chose not to submit the requested documentation, thus impeding GEICO's investigation, and after Plaintiff demanded arbitration less than two weeks from the date that GEICO informed Plaintiff that it neither accepted nor rejected her demand but merely requested further documentation to support it.   As the Hawaii Supreme Court has held:  only "unreasonable delays" will rise to the level of a bad faith denial of insurance benefits, not all delays.  Best Place, 920 P.2d at 347.  When an insurer relies on a reasonable interpretation of a policy term, thereby causing some delay, as GEICO did here, that delay typically will not be "unreasonable."  Id.   Any delay that GEICO's decision to arbitrate the claims may have caused, according to Plaintiff's request and the provisions of the UIM policy, was reasonable given the circumstances of this case.

Still, Plaintiff would claim that the fact that "it took over two years from the date of Plaintiff's initial offer to settle in February, 2003, and the receipt

19

of the Arbitration Award money on March 18, 2005, . . . combined with the sizable

Award raises a material question of fact for the tier of fact to determine if

Defendant engaged in bad faith conduct by virtue of an 'unreasonable delay.'"

Plaintiff also would argue that the arbitration award made in favor of Plaintiff

should provide proof of bad faith conduct.  The Court disagrees.  If Plaintiff had

responded to GEICO's March 31, 2003 letter with documentation as requested,

which was made six business days after Plaintiff's demand, the benefits

compensation process may not have been delayed for that amount of time.  The

failure to submit documentation reasonably forced GEICO to continue with the

investigation into Plaintiff's claims, leading to the arbitration, as contemplated by

Plaintiff and the UIM policy.  The favorable award to Plaintiff, moreover, does not

provide evidence of bad faith conduct because Defendants reasonably harbored

concern over the claims in Plaintiff's demand, as some of the claims were

speculative and undocumented.  Under these facts, the Court finds that any delay

that was caused was reasonable in light of Plaintiff's actions and does not amount

to bad faith conduct.  The Court, therefore, GRANTS summary judgment in favor

of Defendants.

CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 16, 2007.



_____
David Alan Ezra
United States District Judge

Michell Carter vs. GEICO Direct, et al., Civil No. 07-00140 DAE-LEK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT